IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| STEVEN P. NISSLEY, | *   CHAPTER 7 |
|     Debtor | * |
| | *   CASE NO. 1:13-bk-04754-MDF |
| MARKIAN R. SLOBODIAN, ESQ., | * |
| Trustee for the Bankruptcy Estate of | * |
| Stephen P. Nissley, | * |
|     Movant | * |
| | * |
|     v. | * |
| | * |
| STEVEN P. NISSLEY, | * |
|     Objectant | * |

## OPINION

Before me is the Objection filed by Steven P. Nissley ("Debtor") to the Motion filed by Markian R. Slobodian, Trustee (the "Trustee") to sell certain real estate to which Debtor held title before he filed a Chapter 7 bankruptcy petition on September 16, 2013. The real estate is an undeveloped, 10.5-acre parcel of rural land (the "Property") located on Down the Lane Road[1] in Conewago Township, Dauphin County, Pennsylvania. The Motion seeks approval of the Trustee's agreement to sell the Property free and clear of liens and encumbrances to Vicki Diane Alwine and James M. Alwine, Jr. ("Alwines") for the sum of $100,000. Nissley objects to the proposed sale on the grounds that the sales price is less than the fair market value of the Property, which Nissley currently asserts to be $125,000.[2] Nissley avers that the Trustee did not

---

[1] According to a Land Appraisal Report admitted into evidence at the hearing, the address of the Property is "Roundtop Road, Elizabethtown, PA 17022." The testimony indicated that the Property is also considered to be located on Down the Lane Road in Conewago Township, Dauphin County. No deed was admitted into evidence to show the legal address of the Property.

[2] Nissley valued the Property at $130,000 on his Schedule A filed on October 28, 2013.

1

market the Property for a sufficient length of time and with adequate advertisement before entering into the sales agreement.

On October 9, 2015, a hearing was held on this matter wherein Nissley offered expert testimony from a licensed real estate appraiser, Robert Stoner ("Stoner"), to support his objection. The matter was taken under advisement.[3]

## Discussion

The Trustee seeks approval of a sale proposed under 11 U.S.C. § 363(f), which grants him authority to sell estate property free and clear of liens when certain conditions involving the rights of the lienholders have been met. There is no dispute that those conditions have been met in this case. Debtor filed the lone objection to the sale.

It has long been recognized that "[u]nder § 363 of Title 11, Congress gave trustees a broad power to sell property of an estate. . . . This section clearly indicates that the manner of sale is within the discretion of the trustee. . . ." *Berg -v- Scanlon (In re Alisa P'ship),* 15 B.R. 802 (Bankr. D. Del. 1981); *Scherer v. Fed. Nat'l Mortg. Assoc. (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821, 825 (Bankr. N.D. Ill. 1993) ("courts have consistently acknowledged" that manner of sale is within trustee's discretion). "Court approval of [a] trustee's motion to sell is warranted when the trustee has demonstrated sound business judgment in requesting the sale. The proper exercise of such judgment is shown when the purchase price is fair and reasonable and the sale process has been conducted in good faith by the trustee and

---

[3]The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core, non-*Stern* proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7052, which is applicable to contested matters pursuant to Rule 9014.

2

the prospective purchaser." *In re Scimeca Found., Inc.*, 497 B.R. 753, 771 (Bankr. E.D. Pa. 2013) (citing *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149-150 (3d Cir. 1996). "[A] trustee's sale of estate property, and thus his acceptance of any bid, is governed by the business judgment test . . . . Essentially, this requires a trustee to establish sound business reasons for the terms of the proposed sale. . . ." *In re Scimeca Found.*, 497 B.R. at 771 (citations omitted). Under this test, the Court considers factors such as (1) any improper or bad faith motive; (2) whether the price is fair and the negotiations occurred at arm's length; and (3) whether the property has been properly exposed to the market with reasonable notice to all interested parties. *Id.* In deciding whether to approve a proposed sale of an estate asset outside the ordinary course of business where there is no showing of abuse of discretion a bankruptcy court should accord deference to a trustee's decision-making. *In re JL Bldg., LLC*, 452 B.R. 854, 859 (Bankr. D. Utah 2011).

In the matter before me, Debtor does not challenge the Trustee's motive or good faith, nor does he allege that the sale was not at arms length. He challenges only the fairness of the price and whether the property was properly exposed to the market.

It is undisputed that after having marketed the Property for approximately 50 days, the Trustee filed a motion to sell it for the asking price, $100,000. The Trustee based the asking price on his market research, which suggested that land values of this type in the general area ranged anywhere from $9235 per acre to $15,000 per acre.[4] The Trustee chose to set the price of

---

[4]Two of the properties shown on the Trustee's "Comparable Analysis" were a 93-acre tract and a 33-acre parcel. The price per acre for these properties was $6782 and $4805, respectively. The sale prices of these much larger parcels are accorded little weight in my valuation of the subject property.

3

the Property in the low end of that range. The proposed purchasers are adjoining landowners who are offering cash. In proposing this sale, the Trustee rejected an offer of $110,000 that was contingent on financing. The objection to the motion is based on Debtor's position that the property is worth $125,000, which figure was supported through Stoner's testimony.

As many courts have noted, when valuing real estate, "many variables . . . can influence the determination [and] we deal here in likelihoods and probabilities, not exactitude." *In re Kertennis*, 40 B.R. 895, 897 (Bankr. D. R.I. 1984) (citations and internal quotations omitted). *See also First Am. Bank of Va. v. Monica Road Assoc. (In re Monica Road Assoc.),* 147 B.R. 385, 390 (Bankr. E.D. Va.1992) (valuation of assets is "not an exact science;" courts "have wide latitude in determining value."). Although appraisals are commonly used to assist a court in establishing value, it is not bound by appraisal values and may form its own opinion as to the value of the subject property after consideration of the appraisers' testimony and their appraisals. *In re Harris*, 97-33412DWS, 1998 WL 318724, *2 (Bankr. E.D. Pa. June 12, 1998). *See The Estate Constr. Co. v. Miller & Smith Holding Co., Inc.*, 1994 U.S. App. LEXIS 557 (4th Cir. January 13, 1994) (finding the expert's estimate of value to be "somewhat low," court increased value by 50%) *cited in Harris*, 1998 WL 318724, *2; *In re Belmont Realty Corp.,* 113 B.R. 118, 120 (Bankr. D. R.I. 1990) (finding appraisals to be weak, court made an independent determination of value).

In the matter before me, Stoner was able to identify only three other properties as "comparables" for the sales comparison approach, the basis for his valuation. Additional comparable sales would have provided a more solid foundation for his conclusions. *See In re Deep River Warehouse, Inc.*, No. 04-52749, 2005 WL 1287987, *10 (Bankr. M.D.N.C. March

4

14, 2005) (appraisal's reliability generally increases with number of true comparables). Moreover, his ability to provide a precise appraisal figure was hampered by factors innate to valuation of unimproved acreage – no two lots are truly alike, it is difficult to find comparable properties within a reasonable radius of a subject, and sales of unimproved acreage are far less frequent than sales of residential real estate. Thus, in this case, Stoner's three comparables were four, nine, and eleven miles, respectively, from the Property. In addition, two of the comparables were sold in 2014 and one was sold in 2013. For these reasons, the Court is not persuaded that the comparable sales cited by Stoner accurately portray the market for the Property.

While the Court does not question Stoner's expertise, his testimony did not show that the Trustee failed to exercise sound business judgment in setting the sale price[5] or in accepting the buyers' offer. As Stoner testified, the marketing period for unimproved tracts of real estate can extend several years. In this case, within a short time after the Property was advertised the Alwines made an offer to pay the asking price with cash.[6] A quick offer of the asking price does not suggest that the Trustee did not exercise proper business judgment in setting the asking price or accepting the offer. While a higher offer was also made, it was contingent on financing, whereas the Alwines offered cash. In short, the Trustee can hardly be faulted for accepting "a bird in the hand" rather than an offer subject to uncertain contingencies. Nor should the trustee be compelled to engage in further marketing on the thin hope that a higher cash offer can be

---

[5] As to the sale price, one of Stoner's "comparables" was a 15-acre tract that sold for $147,000, similar to the Trustee's $10,000 per acre price.

[6] As Stoner also testified, a cash offer for unimproved real estate is superior than one that is contingent on financing because many banks are reluctant to finance such a purchase.

5

obtained.

### III. Conclusion

A Chapter 7 trustee is granted broad discretion under §363(f) to market and sell property of the estate. In this case, the Trustee marketed the Property for a price and in a manner that he believed to be sufficient under the circumstances. Debtor failed to prove that the Trustee abused his discretion by accepting the offer and filing the sale Motion. Therefore, the Objection will be overruled. An appropriate Order will be entered.

By the Court,

Date: October 29, 2015

_Mary D. France_
Chief Bankruptcy Judge
(JK)